UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY DARRYL JAMES,

    Petitioner,

v.

CIVIL ACTION NO. 10-13423
HONORABLE NANCY G. EDMUNDS

THOMAS BELL,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE HABEAS PETITION,
DENYING A CERTIFICATE OF APPEALABILITY, BUT
GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS***

Petitioner Anthony Darryl James has filed a *pro se* habeas corpus petition, challenging his state convictions and sentence of six and a half to ten years in prison for larceny by conversion, Mich. Comp. Laws § 750.362. Respondent Thomas Bell argues in an answer to the habeas petition that Petitioner's claims are procedurally defaulted, not cognizable on habeas review, or without merit. The Court agrees that Petitioner's claims do not warrant habeas relief. Accordingly, the petition must be dismissed.

**I. Background**

Petitioner was charged in three separate Wayne County, Michigan cases with uttering and publishing and larceny by conversion involving property worth over $20,000. In all three cases, it was alleged that Petitioner arranged for reverse mortgages for clients, and when a title company sent him checks for the clients, Petitioner deposited some or all of the money in his own personal account.

In case number 06-7640, the parties stipulated that, in 2004,

> the victim . . . , Shirley S[c]hultz, negotiated with [petitioner Anthony James] for a reverse mortgage. A reverse mortgage was allegedly worked out. Tri-County Title Agency, which was the title insurance company, issued . . . two checks, one in the amount of sixty-thousand dollars, and one in the amount of forty-thousand dollars[,] to Shirley S[c]hultz. They gave both of those checks to Mr. James. Mr. James gave Shirley S[c]hultz the sixty-thousand dollar check and took the forty-thousand dollar check and deposited it and converted it to his own use by depositing it into his account never intending to give that money to Shirley S[c]hultz.

(Plea Tr., 11, Jan. 8, 2007.)

In case number 06-11446, the parties stipulated that, in 2003 and 2004,

> Elizabeth Stein and Mr. and Mrs. Hubert Johnson, Lorain Hawkins and Ms. Willie Harris . . . entered into reverse mortgage negotiations with [Mr. James.] A reverse mortgage was issued. Tri-County Title of Livonia, Michigan issued checks to Mr. James to give to the victims, that is Ms. Stein, Mr. and Mrs. Johnson, Ms. Hawkins, and Ms. Harris[. T]hese checks were all in excess of twenty-thousand dollars, some of them were in excess of a hundred thousand dollars. He did not deliver those checks which were the property of those victims. [Instead, he] deposited them into his own bank account at National City Bank in the County of Wayne.

(*Id.* at 12-13.)

Finally, in case number 06-11448, the parties stipulated that, in 2004, Ms. Mildred Warren

> entered into a reverse mortgage with [petitioner] Anthony James, that the reverse mortgage was supplied by Financial Freedom of San Francisco, Tri-County Title was the title company. Tri-County Title issued two checks to Mrs. Warren for the amount of the mortgage. One check was given to Mrs. Warren, the other check for slightly forty-thousand dollars was kept by Anthony James. He deposited the check into his own account, the National City Bank account in the County of Wayne and thereby converted Ms. Warren's check which was in excess of twenty thousand dollars.

*(Id.* at 14).

On January 8, 2007, Petitioner pleaded no contest in Wayne County Circuit Court

to six counts of larceny by conversion involving property worth over $20,000. In return, the

2

prosecutor dismissed the counts charging Petitioner with uttering and publishing. There was no sentencing agreement, and on February 15, 2007, the trial court sentenced Petitioner to six concurrent terms of six and a half to ten years in prison.

The trial court appointed attorney Sharon Jones to represent Petitioner on appeal, but Petitioner's family retained Jacob Gunter to represent Petitioner in civil litigation and on appeal from his convictions. Mr. Gunter challenged Petitioner's sentence in an application for leave to appeal, whereas Ms. Jones filed a motion for resentencing. The Michigan Court of Appeals denied the application for leave to appeal "for lack of merit in the grounds presented." *People v. James*, No. 278630 (Mich. Ct. App. Sept. 28, 2007). On February 19, 2008, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. James*, 480 Mich. 1076; 744 N.W.2d 157 (2008) (table).

Meanwhile, on October 19, 2007, the trial court conducted a hearing on Petitioner's motion for re-sentencing. The court denied the motion because Petitioner had already applied for, and been denied, leave to appeal through Mr. Gunter. Petitioner appealed the trial court's decision, claiming that the trial court should have addressed the merits of his motion for resentencing. The Michigan Court of Appeals dismissed his appeal for lack of jurisdiction due to his prior appeal from the same conviction and sentence. *See People v. James*, No. 281639 (Mich. Ct. App. Nov. 21, 2007). On March 24, 2008, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issue. *See People v. James*, 480 Mich. 1138; 746 N.W.2d 68 (2008) (table).

Petitioner then filed a motion for relief from judgment in which he raised the following claims: (1) newly discovered evidence regarding witnesses; (2) malicious prosecution; (3)

actual innocence; and (4) ineffective assistance of trial and appellate counsel. The trial court denied the motion pursuant to Michigan Court Rule 6.508(D)(3).[1] The trial court concluded that Petitioner had failed to establish "good cause" for not raising his claims on appeal or in a prior motion and "actual prejudice" resulting from the alleged irregularities. The Michigan Court of Appeals denied leave to appeal the trial court's decision because Petitioner had failed to establish entitlement to relief under Rule 6.508(D). *See People v. James*, No. 292411 (Mich. Ct. App. Oct. 28, 2009).[2] On July 26, 2010, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. James*, 487 Mich. 852; 784 N.W.2d 823 (2010).

On August 16, 2010, Petitioner filed his federal habeas corpus petition pursuant to

---

[1] Rule 6.508(D)(3) reads:

**(D) Entitlement to Relief**. The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

. . . .

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief. . . .

Mich. Ct. R. 6.508(D)(3).

[2] Judge Brian K. Zahra voted to grant Petitioner's motion to supplement his application for leave to appeal.

28 U.S.C. § 2254. He filed the petition in the Western District of Michigan, which transferred his petition to this District because venue is proper here. The grounds for relief are: (1) Petitioner was denied his constitutional right to file an application for leave to appeal; (2) it was unconstitutional to score points for offense variables four, nine, ten, and thirteen of the sentencing guidelines; (3) exceeding the sentencing guidelines was unconstitutional; and (4) it was unconstitutional not to grant a new trial on the basis of newly discovered evidence of innocence.

Respondent argues that Petitioner's claims are procedurally defaulted to the extent that he failed to comply with state law. Procedural defaults, however, are not jurisdictional matters, *Trest v. Cain*, 522 U.S. 87, 89 (1997), and the Court prefers to address the merits of Petitioner's claims rather than analyze whether the claims are procedurally defaulted. Consequently, any procedural defaults are excused. The Court will proceed to address the merits of Petitioner's claims, using the following standard of review.

## II. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, state prisoners are not entitled to the writ of habeas corpus unless the state court's adjudication of their claims on the merits

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

### III. Discussion

**A. The Right to Appeal**

Petitioner alleges that he was denied his constitutional right to an appeal by leave of court when the Michigan Court of Appeals dismissed his appeal from the trial court's decision denying his motion for resentencing. The Court of Appeals dismissed the appeal for lack of jurisdiction because Petitioner had already appealed his convictions and

sentence through retained counsel.

"[A] state is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all." *Griffin v. Illinois*, 351 U.S. 12, 18 (1956) (citing *McKane v. Durston*, 153 U.S. 684, 687-88 (1894)); *accord Lafler v. Cooper*, __ U.S. __, __, 132 S. Ct. 1376, 1387 (2012) (stating that "the Constitution does not require States to provide a system of appellate review"); *Abney v. United States,* 431 U.S. 651, 656 (1977) (citing *McKane*, 153 U.S. 684, for the principle that "there is no constitutional right to an appeal"). But, if a state does provide for appellate review, it may not do so in a discriminatory manner. *See Halbert v. Michigan*, 545 U.S. 605, 610 (2005) (stating that "[t]he Federal Constitution imposes on the States no obligation to provide appellate review of criminal convictions," but "[h]aving provided such an avenue . . . , a State may not 'bolt the door to equal justice' to indigent defendants") (citing *McKane*, 153 U.S. at 687, and *Griffin*, 351 U.S. at 23-24). "[T]he procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Evitts v. Lucey*, 469 U.S. 387, 393 (1985).

In Michigan, defendants who plead guilty or no contest cannot appeal as a matter of right; instead, they are required to apply for leave to appeal. Mich. Const. Art. 1, § 20. As explained in *Halbert*, 545 U.S. at 612,

> [a] defendant convicted by plea who seeks review in the Michigan Court of Appeals must . . . file an application for leave to appeal pursuant to Mich. Ct. Rule 7.205 (2005). In response, the Court of Appeals may, among other things, "grant or deny the application; enter a final decision; [or] grant other relief." Rule 7.205(D)(2). If the court grants leave, "the case proceeds as an appeal of right." Rule 7.205(D)(3).

Petitioner's retained attorney, Jacob Gunter, filed an application for leave to appeal

in the Michigan Court of Appeals on or about June 13, 2007. He raised seven claims, including some of the same sentencing claims that Petitioner has raised in his habeas petition. Thus, Petitioner was not denied an appeal. He had an appeal through retained counsel, and he was not entitled to a second one when his appointed attorney appealed the denial of his motion for resentencing. *See* Mich. Ct. R. 7.205(F)(2) (stating that, "[i]n a criminal case, the defendant may not file an application for leave to appeal from a judgment of conviction and sentence if the defendant has previously taken an appeal from that judgment by right or leave granted or has sought leave to appeal that was denied").

Furthermore, there is nothing in the record that suggests the Court of Appeals discriminated against Petitioner when it dismissed his appeal for lack of jurisdiction. The Court of Appeals cited Rule 7.205(F)(2) and noted that Petitioner admitted to being "informed by retained counsel that an application for leave to appeal had been filed on his behalf." *James*, Mich. Ct. App. No. 281639. The Court of Appeals also noted that Petitioner had not informed the Court of Appeals that his first application for leave to appeal allegedly was filed without his permission. *Id.*

This Court concludes that Petitioner was not deprived of his constitutional right to due process or his right to equal protection of the law when the Michigan Court of Appeals dismissed his second appeal for lack of jurisdiction. Consequently, he has no right to habeas relief on the basis of his first claim.

**B. The Sentence**

Petitioner's second and third claims challenge his sentence. He contends that it was unconstitutional to score points for offense variables four, nine, ten, and thirteen of the sentencing guidelines. He also contends that it was unconstitutional for the trial court to

8

depart upward from the sentencing guidelines when it sentenced him. Petitioner presented these claims to the Michigan Court of Appeals, which denied leave to appeal "for lack of merit in the grounds presented." *James*, Mich. Ct. App. No. 278630.

This Court finds no merit in the claims because the state court's interpretation and application of its sentencing laws and guidelines "is a matter of state concern only." *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) (citing *Travis v. Lockhart*, 925 F.2d 1095, 1097 (8th Cir. 1991), and *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988)). "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984), and *Rose v. Hodges*, 423 U.S. 19, 21-22 (1975) (*per curiam*)). Petitioner is entitled to habeas corpus relief only if he is in custody in violation of federal law. 28 U.S.C. § 2254(a). Even if Petitioner had stated a federal constitutional claim, his claims lack merit for the following reasons.

### 1. The Sentencing Guidelines

#### a. Offense Variable Four

The trial court scored ten points for offense variable four (psychological injury to victim). This is an appropriate score if "[s]erious psychological injury requiring professional treatment occurred to a victim." Mich. Comp. Laws § 777.34(1)(a).

The trial court determined on the basis of common sense that senior citizens who did not understand the financial system and who trusted the people with whom they dealt would be traumatized by Petitioner's conduct. (Sentence Tr., 17-18, Feb. 15, 2007.) The record supports the trial court's conclusion that Petitioner's victims were traumatized. Some of the victims lost their homes (*id.* at 5), and Shirley Schultz' son thought that his mother's health deteriorated as a result of the stress and anguish Mrs. Schultz experienced

from Petitioner's refusal to give her the money owed to her (*id.* at 29-30). Mildred Warren informed the trial court that the emotional stress she experienced from the ordeal with Petitioner was a contributing factor to her recent hypertension. (*Id.* at 33.) The fact that none of the victims claimed to have sought psychological treatment is not conclusive. Mich. Comp. Laws § 777.34(2). The Court therefore concludes from the record that offense variable four was properly scored at ten points for serious psychological injury requiring professional treatment.

### b. Offense Variable Nine

Petitioner contends next that the trial court erred by scoring offense variable nine (number of victims) at twenty-five points for "10 or more victims who were placed in danger of physical injury or death, or 20 or more victims who were placed in danger of property loss." Mich. Comp. Laws § 777.39(1)(b). According to Petitioner, there were less than ten victims, and his score should have been zero.

Offense variable nine initially was scored at twenty-five points because the prosecutor estimated that eighty-three people lost title to their homes due to Petitioner's conduct. Defense counsel objected, however, and the trial court then changed the score to zero. (Sentence Tr., 6-7, 18-19, Feb. 15, 2007.) Because Petitioner prevailed on his claim in the state trial court, his argument that the trial court assessed twenty-five points for offense variable nine has no basis in fact.

### c. Offense Variable Ten

The trial court scored offense variable ten at ten points for exploitation of vulnerable victims. Ten points is appropriate if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his

or her authority status." Mich. Comp. Laws § 777.40(1)(b). "'Exploit' means to manipulate a victim for selfish or unethical purposes." Mich. Comp. Laws § 777.40(3)(b). "'Vulnerability' means the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." Mich. Comp. Laws § 777.40(3)(c).

Petitioner claims that he did not exploit anyone on the basis of age or any other factor, but the prosecutor maintained that Petitioner preyed on vulnerable elderly victims, and even defense counsel agreed that a score of ten points was appropriate. (Sentence Tr., 7-8, 18-20, Feb. 15, 2007.) Because the record indicates that Petitioner's victims were elderly people, some of whom were in the early stages of dementia, ten points was a proper score.

### d. Offense Variable Thirteen

Offense variable thirteen is used to calculate whether the offense involved a "continuing pattern of criminal behavior." Mich. Comp. Laws § 777.43. The trial court scored five points for offense variable thirteen in case number 06-7640, but said that it would think about the other cases. (Sentence Tr., 21, Feb. 15, 2007.) Petitioner alleged in his subsequent motion for re-sentencing that the trial court scored ten points for offense variable thirteen in case numbers 06-1146 and 06-1148. He maintained that the score should have been five points because the wording of the statute renders the five-point and ten-point scores indistinguishable in property crimes.

The statute provides for a score of ten points where "[t]he offense was part of a pattern of felonious criminal activity involving a combination of 3 or more crimes against a person or property . . . ." Mich. Comp. Laws § 777.43(1)(d). The statute provides for a score of five points where "[t]he offense was part of a pattern of felonious criminal activity

11

involving 3 or more crimes against property." Mich. Comp. Laws § 777.43(1)(f). When determining the appropriate points for this variable, "all crimes within a 5-year period, including the sentencing offense, [must] be counted regardless of whether the offense resulted in a conviction." Mich. Comp. Laws § 777.43(2)(a).

The prosecutor estimated that there were eighty-three victims who lost title to their homes and that there was a potential liability of over $1,100,000. On the charged cases alone, there was a property loss of over $300,000. (Sentence Tr., 6, 11, Feb. 15, 2007.) This was a "classic case of [a] continuing pattern of criminal behavior." (*Id.* at 9.) Therefore, the trial court did not err by opting to score offense variable thirteen at ten points.

### e. Summary

For all the reasons given above, the Court concludes that the trial court did not rely on "extensively and materially false" information, *Townsend v. Burke*, 334 U.S. 736, 741 (1948), or on "misinformation of constitutional magnitude." *United States v. Tucker*, 404 U.S. 443, 447 (1972). Therefore, Petitioner's constitutional rights were not violated by the trial court's scoring of the sentencing guidelines.

### 2. Departure from the Sentencing Guidelines

Petitioner claims that the trial court violated his constitutional rights by exceeding the sentencing guidelines, which were estimated at nineteen to thirty-eight months ( one year, seven months to three years, two months).[3] (Sentence Tr., 26, Feb. 15, 2007.) He points

---

[3] The Michigan Supreme Court explained in *People v. Claypool*, 470 Mich. 715; 684 N.W.2d 278 (2004), that

> Michigan . . . has an indeterminate sentencing system in which the

out that he had no criminal history. He also claims that his clients had payment agreements with him and that they were never required to make monthly payments. He further alleges that he had to remortgage his own home to help his clients and that he never intended to keep anyone's money permanently.

The trial court stated at sentencing that, although everything about Petitioner suggested decency, the sentencing guidelines were very low, and the penalty for an unconscionable crime such as Petitioner's should be life imprisonment or a number of years. (*Id.* at 48-49, 52.) The court thought that Petitioner had burdened his victims financially, physically, and psychologically. (*Id.* at 49.) The court then gave the following specific reasons for exceeding the guidelines: (1) all the victims were over sixty years old and had few working years left to recover from the disaster; (2) each victim not only lost money, but had an increased financial obligation due to the interest that was being applied to their loans; and (3) the victims' lives were destroyed. (*Id.* at 50-51.)

The trial court sentenced Petitioner to a minimum of six and a half years in prison and a maximum of ten years in prison. The minimum sentence was more than twice the maximum amount of the estimated sentencing guidelines. Nevertheless, the duration or severity of a sentence generally is not a basis for habeas relief, and a plurality of the

---

> defendant is given a sentence with a minimum and a maximum. The maximum is not determined by the trial judge but is set by law. M.C.L. § 769.8. The minimum is based on guidelines ranges . . . . The trial judge sets the minimum but can never exceed the maximum (other than in the case of a habitual offender . . . ).

*Id.*, 470 Mich. at 730, n.14; 684 N.W.2d at 286, n.14. The maximum prison term for larceny by conversion involving property worth $20,000.00 or more is ten years. Mich. Comp. Laws § 750.356(2)(a).

Supreme Court has stated that "the Eighth Amendment contains no proportionality guarantee." *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). "Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001 (Kennedy, J., concurring in part and concurring in the judgment) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)).

The Supreme Court held in *Harmelin* that a sentence of life imprisonment without the possibility of parole for a first-time offender convicted of possessing over 650 grams of cocaine was not cruel and unusual punishment under the Eighth Amendment. If Harmelin's sentence was not unconstitutional, Petitioner's sentence of six and a half to ten years for crimes that resulted in the loss of elderly peoples' money and homes was not unconstitutional. His sentence did not exceed the statutory limit, and so "long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000) (quoting *Williams v. New York*, 337 U.S. 241, 245 (1949)). Petitioner therefore has no right to relief on the basis of his claim that the trial court's departure from the sentencing guidelines was unconstitutional.

## C. Innocence

Petitioner's fourth and final claim alleges that it was unconstitutional for the state trial court not to grant a new trial on the basis of newly discovered evidence of actual innocence. Petitioner raised this issue in his motion for relief from judgment. The state trial court concluded in its decision denying the motion that Petitioner had failed to provide any credible documentation to support his claims of newly discovered evidence. The court stated that Petitioner's claim of actual innocence lacked merit because Petitioner

acknowledged his guilt by pleading no contest.

This Court finds no merit in Petitioner's claim for similar reasons. At his plea, Petitioner agreed to waive his trial rights, and he claimed that he was submitting his plea to the trial court of his own free will. He claimed that no one had promised him anything or threatened him to give up his rights. He also stipulated to the facts and agreed that the full amount owed to the victims was not paid to them.

The Court notes, moreover, that "a claim of 'actual innocence' is not itself a constitutional claim" for which habeas relief may be granted. *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Even if it were, the Supreme Court has "described the threshold for any hypothetical freestanding innocence claim as 'extraordinarily high.'" *House v. Bell*, 547 U.S. 518, 555 (2006) (quoting *Herrera*, 506 U.S. at 417). A claim of innocence requires showing that, in light of some new evidence, "more likely than not any reasonable juror would have reasonable doubt." *Id.* at 538.

Petitioner's claim of innocence appears to be based on the alleged dismissal of the victims' civil cases against him. The dismissal of a civil case against a criminal defendant is not necessarily an indication that the defendant is actually innocent of the underlying criminal charges. Civil cases can be dismissed for a variety of reasons unrelated to the defendant's guilt or innocence in the criminal case.

Furthermore, Petitioner's claims that the victims received some money from him and did not expect any more money from him is not supported by the record. For example, Petitioner alleges that Ms. Willie Harris testified at her deposition that she received $37,864.51 from Petitioner and did not expect any more money from him. Petitioner concludes from this testimony that it is impossible for him to have committed larceny by

15

conversion. *See* "Newly Discovered Material Evidence of Anthony Darryl James Actual and Fatual (sic) Innocence" [dkt. #17], pages 1-2.

A review of Ms. Harris's deposition confirms that she received $37,864.51 from Petitioner and that she did not expect to receive any more money. But she went on to say that she did not know at the time how much the check would be and that she was not aware that the amount she should have received was greater than $37,864. She also testified that she never received a check for $39,439.16, which was made payable to her and was endorsed by someone else. *See* excerpt of Willie P. Harris' deposition [dkt. #17], pages 45-50.

Petitioner claims that he could not have intended to commit larceny by conversion with Mildred Warren because Ms. Warren admitted to receiving checks for $51,000, $20,000, and $5,000. The deposition transcript, however, indicates that, although Ms. Warren received a check for $51,000 and initially was satisfied with that amount, she expected approximately $35,000 more from Petitioner, and she did not recall receiving checks for $20,000 and $5,000. *See* excerpt of Mildred Warren's deposition [dkt. #17], pages 17-18, 62, 85, 97, 103, 110.

Josephine Johnson testified at a deposition that she expected about $63,000 from Petitioner, but received only two checks, one for $10,000.00 and one for $650.00. *See* excerpt of Josephine Johnson's deposition transcript [dkt. #17], pages 30, 74-80. Shirley Schultz testified that she received a check for $61,000 and later realized that she should have received an additional check for $41,000. She also stated that, after she contacted the police, Petitioner confessed to her that he kept $41,000 for himself. *See* excerpt from Shirley Schultz' deposition [dkt. #17], pages 26-27.

It is clear from the depositions that Petitioner did not give his victims the full amounts due to them. Therefore, he has not alleged a credible claim of actual innocence, and the state trial court had no basis for allowing Petitioner to withdraw his plea and go to trial.

### IV. Conclusion

The state court orders rejecting Petitioner's claims were not contrary to clearly established federal law as determined by the Supreme Court. The orders also did not constitute unreasonable applications of clearly established federal law or unreasonable determinations of the facts. Accordingly, the petition for a writ of habeas corpus [dkt. #1] is **DENIED**.

### V. Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A habeas petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 1983)).

Reasonable jurists could not debate whether the Court's resolution of Petitioner's

claims should have been resolved differently or whether the claims deserve encouragement to proceed further. Accordingly, the Court **DECLINES** to issue a certificate of appealability. Petitioner nevertheless may proceed *in forma pauperis* on appeal if he chooses to appeal the Court's decision.

                                       s/Nancy G. Edmunds
                                       Nancy G. Edmunds
                                       United States District Judge

Dated: April 30, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 30, 2013, by electronic and/or ordinary mail.

                                       s/Kim Grimes
                                       Acting in the absence of Carol Hemeyer,
                                       Case Manager to Judge Edmunds